**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
LOCUST VALLEY CENTRAL SCHOOL DISTRICT,
LOCUST VALLEY CENTRAL SCHOOL DISTRICT
BOARD OF EDUCATION,

                           Plaintiffs,

                    -against-

BETTY A. ROSA, in her official capacity as
Commissioner of Education, DENISE M. MIRANDA, in
her official capacity as Commissioner of the New York
State Division of Human Rights, LETITIA A. JAMES, in
her official capacity as Attorney General of the State of
New York, and JANE DOE and JOHN DOE on behalf of
their minor daughter JANIE DOE, UNITED STATES
DEPARTMENT OF EDUCATION, LINDA E.
MCMAHON in her official capacity as United States
Secretary of Education,

                        Defendants.
-------------------------------------------------------------------X

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Case No.: 25-6937

*Jury Trial Demanded*

Plaintiffs Locust Valley Central School District ("District") and Locust Valley Central

School District Board of Education ("Board") bring this action for declaratory and injunctive relief

and allege as follows:

## NATURE OF THE PROCEEDING

1. Plaintiffs are the governing bodies responsible for setting policies for public school

students in the District. They bring this action for declaratory and injunctive relief because they

are under threat of enforcement actions by either the federal government or the state government

regardless of how they implement policies with respect to separation of males and females in

intimate spaces, including bathrooms and locker rooms, and sports.

2. On one hand, Defendant Commissioner Betty A. Rosa has imposed an order, requiring Plaintiffs to permit biological males to enter intimate spaces and play sports with biological females (and vice versa) in accordance with their gender identity.

3. On the other hand, since this summer, the United States Department of Education ("USDOE"), a cabinet agency within the executive branch of the United States government, has engaged in numerous enforcement actions against school districts throughout the country, including in New York, for permitting students to use intimate spaces and play sports in accordance with their gender identity.[1] USDOE grounded its actions in the text of Title IX of the Education Amendments of 1972 ("Title IX"), its implementing regulations, recent court decisions, the President's Executive Orders, and guidance from the United States Department of Justice ("DOJ"). USDOE's enforcement actions are either pending or have already resulted in penalties including

---

[1] These enforcement actions primarily focus on violations of Title IX, particularly concerning transgender students' access to bathrooms, locker rooms, and participation in sports consistent with their gender identity rather than biological sex. Those enforcement actions include the following:

- Denver Public Schools (CO): on August 28, 2025, USDOE investigated and found the schools in violation of Title IX for establishing all-gender restrooms and allowing students to use bathrooms aligned with their gender identity. USDOE required the district to revert to single-sex facilities or face enforcement action. This action followed the transformation of a girls' restroom into an all-gender facility at a high school.

- Kansas School Districts: on August 14, 2025, USDOE confirmed that Topeka, Shawnee, Olathe, and Kansas City school districts are under investigation for policies permitting students to use sports and intimate facilities based on gender identity. The Board, upon information and belief, has the understanding that this investigation/enforcement action remains pending.

- Northern Virginia School Districts: on July 25, 2025, USDOE found that five districts (Alexandria City, Arlington, Fairfax County, Loudoun County, and Prince William County Public Schools) violated Title IX by allowing transgender students to access restrooms and facilities matching their gender identity. USDOE gave these districts 10 days to comply or face enforcement actions. The districts did not comply. As a result, the USDOE designated them "high-risk" grantees, resulting in the imposition of funding restrictions on them.

- Saratoga Springs City School District (NY): on May 6, 2025, USDOE launched an investigation into the school district for allowing biological boys to play girls' sports and use girls' locker rooms for Title IX violations. The Board, to the best of its knowledge, believes that this investigation/enforcement action remains pending.

- New York City School System. USDOE threatened to withhold funding from the school system because of its bathroom policies. The Board understands this investigation/enforcement action remains pending. This fall, New York City sued USDOE to prevent enforcement.

the withholding or reclassification of federal funding.  To date, it is Plaintiffs' understanding that every concluded enforcement action by USDOE has resulted in the imposition of penalties.

4.      The District must comply with Title IX, as it accepts federal funding.

5.      After commencement of the school year on September 2, 2025 and learning of federal enforcement actions against other school districts, Plaintiffs passed a resolution providing students access to restrooms, locker rooms and sports that correspond to the student's "sex" as defined under Title IX (the "Resolution").

6.      The facially neutral Resolution requires all students to use school restrooms/locker rooms and play sports corresponding to their biological sex, while also providing all students access to gender-neutral facilities.

7.      This Resolution complies with federal law, including Title IX, recent federal court decisions interpreting "sex" to mean biological sex (*e.g.*, *Dep't of Educ. v. Louisiana,* 603 U.S. 866 (2024); *Tennessee v. Cardona*, 737 F. Supp. 3d 510, 522 (E.D. Ky. 2024); *Kansas v. Dep't of Educ.*, 739 F. Supp. 3d 902, 923 (D. Kan. 2024)), and Executive Order 14168.

8.      The facially neutral Resolution also complies with state law, as it applies equally to all students regardless of gender identity or transgender status.  Under New York State Appellate Division precedent, this across-the-board biological-sex-based Resolution does not constitute discrimination.  *See Hispanic AIDS Forum v. Bruno*, 16 A.D.3d 294 (N.Y. App. Div. 1st Dept 2005).  Accordingly, under *Bruno*, the following do not apply because there is no discrimination: New York Education Law § 12 ("DASA"), New York Executive Law § 296(4) ("GENDA"), and "Proposition One," set forth in Article I, § XI of the New York Constitution.  Those laws do not apply to intimate spaces or sports, and no court has ever applied those statutes in that manner.

9.      On or about October 3, 2025, Jane and John Doe, on behalf of their minor

transgender daughter Janie Doe (together, the "Does" or "Doe Petitioners"), filed a petition before Commissioner Rosa ("Doe Petition") under section 310 of the New York State Education Law styled *In re Jane and John Doe*, Appeal No. 22,518 (N.Y.S. Ed. Dep't.) (the "Doe Proceeding") against an entirely different school district: the Massapequa Union Free School District ("Massapequa UFSD"). In that administrative proceeding, the Doe Petitioners claimed that the resolutions passed by Massapequa UFSD in September 2025 establish a bathroom policy consistent with Title IX are discriminatory under state law—namely, DASA and GENDA.

10. Despite Massapequa UFSD's argument that the Commissioner pre-determined the resolution of the Doe Petition and repeatedly determined in other actions that she has no jurisdiction to hear "novel constitutional issues," including under the Supremacy Clause of the United States Constitution, Commissioner Rosa, on October 14, 2025, entered an order in the Doe Proceeding granting a stay of Massapequa UFSD's resolutions after receiving briefing from Massapequa UFSD as to why a stay should not issue. That stay forbade Massapequa UFSD from enforcing the resolutions until final disposition of the appeal (the "Stay Order"). The Doe Proceeding remains pending and will take months to resolve while the Stay Order remains in effect.

11. The Commissioner issued the Stay Order reasoning in conclusory fashion that "[s]tate law and guidance on the rights of transgender individuals is unequivocal" and "[t]he case law, federal Executive Order (EO), and Title IX regulations relied upon by [Massapequa UFSD] are inapposite." The Commissioner provided no citations or support for these statements.

12. By issuing the Stay Order, Commissioner Rosa forced Massapequa UFSD to allow biological males to enter intimate spaces with biological females (and vice versa) for an indefinite period of time to the detriment of its students and in contravention of the law.

13. On November 12, 2025, the Commissioner entered a "Joinder Order", joining the

4

District into the Doe Proceeding and extending the Stay Order to the District reasoning "that joinder is the most effective method to resolve th[e] legal issue" of "whether the districts must comply with Title IX and a federal executive order or, in their view, 'conflicting' provisions of State law."

14. The Commissioner already predetermined the outcome of the Doe Proceeding as evidenced by: (i) her office coordinating with the New York Civil Liberties Union ("NYCLU") to bring the Doe Proceeding before the Commissioner, (ii) a September 24, 2025 joint letter sent to Massapequa UFSD from the Commissioner's office and Attorney General's office stating: "New York State law protects transgender individuals, including students, from discriminatory treatment. There is no federal law to the contrary . . . Should the board adopt and implement a resolution that is inconsistent with state law, please be aware that enforcement actions may result", (iii) the Commissioner's conclusory and unsupported ruling in the Stay Order that state law is "unequivocal" and federal law is "inapposite", and (iv) the Joinder Order clarifying that the disposition of the Doe Proceeding hinges on the Commissioner's already determined "legal issue" of "whether the districts must comply with Title IX and a federal executive order or, in their view, 'conflicting' provisions of State law.".

15. By issuing the Joinder Order and extending the Stay Order to the District, the Commissioner has caused the District to be in a similar position as Massapequa UFSD.

16. Commissioner Rosa's Stay Order and Joinder Order have put Plaintiffs in an impossible position. Plaintiffs must either: (i) disobey the Commissioner's stay to comply with Title IX and subject themselves to enforcement action by New York State, or (ii) violate Title IX to comply with the Commissioner's stay and subject themselves to enforcement by USDOE and DOJ.

17. Plaintiffs seek, *inter alia*, a declaratory judgment that their Resolution complies

with law and an injunction enjoining Commissioner Rosa, Commissioner Miranda and Attorney General James from enforcing their interpretation of state law against the District.

18. Plaintiffs do not seek money damages against any Defendant.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as a federal question is involved in the parties' dispute, including Title IX and the Declaratory Judgment Act 28 U.S.C. §§ 2201–02.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (e)(1). A substantial part of the events or omissions giving rise to this Complaint occurred and continues to occur within the Eastern District of New York.

## PARTIES

21. Plaintiff Locust Valley Central School District is a K-12 public school district located in Locust Valley, New York that currently serves approximately 1,800 students. District administrative offices are located at 22 Horse Hollow Road, Locust Valley, New York 11560.

22. Plaintiff Locust Valley Central School District Board of Education is the duly elected governing body of the District. The Board is comprised of seven (7) residents of the community.

23. Defendant Betty A. Rosa is the Commissioner ("Commissioner") of the New York State Education Department ("NYSED"), an agency of the State of New York, and is the President of the University of the State of New York. The Commissioner presided over the Doe Proceeding and issued the Stay Order on October 14, 2025. On November 12, 2025, Commissioner Rosa subsequently issued the Joinder Order extending the Stay Order to Locust Valley forcing Locust Valley to be named as a "related party" to the Doe Proceeding. She is sued in her official capacity.

24.     Defendant Letitia A. James, the Attorney General of the State of New York (the "Attorney General") is the head of the New York State Department of Law.  The Attorney General investigates and prosecutes claims of education-related discrimination under state, federal, and local law as well as other civil rights related claims and has a dedicated division titled the Division of Social Justice that engages in civil rights enforcement through its Civil Rights Bureau.  Letitia A. James is the current Attorney General of the State of New York. She is sued here in her official capacity only.

25.     Defendant Denise M. Miranda is the Commissioner of the New York State Division of Human Rights, an agency of the State of New York in charge of, *inter alia*, enforcing civil rights violations under the New York State Human Rights Law, which includes GENDA.  She is sued in her official capacity (together with Betty Rosa and Letitia James, "State Defendants").  On March 14, 2025, the District received a complaint filed with the NYS Division of Human Rights ("DHR") asserting that the preclusion of a biological girl student from the boys bathroom violates her civil rights (the "DHR Complaint").  The predicate of the complaint is an email sent by Dr. Danielle Cosci Turner, the District's Director of Health, Physical Education & Athletics, to the student's mother that states the student can either use the gender-neutral locker room or the locker room that conforms with her gender assigned at birth.  The DHR Complaint remains open and no decision by DHR has been issued.

26.     State Defendants are named in this action because they have taken the position that New York State law imposes requirements on Plaintiffs that may be contrary to the proper interpretation of state and federal law.

27.     Defendants John Doe and Jane Doe are the parents of Janie Doe, a transgender student who attends school in Massapequa UFSD (not Locust Valley), and commenced the Doe

Proceeding against Massapequa UFSD on behalf of Janie Doe. Upon information and belief, the Doe Petitioners live in Massapequa, New York. According to the Doe Petition, Janie Doe is in 9th grade and attends Massapequa UFSD's Ames Campus ("Ames"), a small single grade school with accessible gender-neutral bathroom and gender-neutral locker room located immediately next to the gymnasium.

28. Defendant United States Department of Education is a Cabinet-level federal agency in charge of, *inter alia*, regulating and enforcing federal law, including but not limited to Title IX, and federal funding requirements in the field of education.

29. Defendant Linda E. McMahon is the United States Secretary of Education and official in charge of the USDOE.

30. USDOE noted "a recently released report finds that requiring women to undress or use the bathroom in the presence of men causes distress in women, violates their right to privacy, and can deny women equal access to benefits of education programs and activities. See Reem Alsalem, Special Rapporteur on Violence Against Women and Girls, Its Causes and Consequences, U.N. Doc. A/79/325 at 5/24 (August 27, 2024), https://docs.un.org/en/A/79/325. The report indicates that policies denying female students sex-separated intimate facilities increase the risk of sexual harassment, assault, voyeurism, and physical and sexual attacks.

31. Moreover, in its recent enforcement action against Fairfax County Public Schools, USDOE observed that female students had become concerned because a male student sharing the bathroom with female students "made sexual jokes, momentarily touched other students in an inappropriate manner, and watched female students changing in the locker room." Letter of Findings – OCR case nos. 11251305; 11251306; 11251307; 11251308; and 11251309 at 13.

**FACTS AND PROCEDURAL HISTORY**
**UNDERLYING THIS PROCEEDING**

**A. Locust Valley Board of Education Promulgates The October 15, 2025 Resolution**

32. This summer, USDOE commenced numerous enforcement actions against public school districts throughout the country, including in New York, for allowing students to use bathrooms and locker rooms in accordance with their gender identity. USDOE maintains that allowing such use violates Title IX.

33. After learning of those enforcement actions, and immediately after the commencement of the school year, Plaintiffs engaged in a process to ensure they comply with all laws, including Title IX, to avoid any enforcement action by the federal government.

34. As a result of that process, on October 15, 2025, the Board of Education ("BOE") for the District adopted the six-page Resolution setting forth the non-exclusive legal basis for its adoption. The Resolution states, in pertinent part, as follows:

> RESOLVED, that the Board of Education of the Locust Valley Central School District mandates that all students shall be required to use restrooms and locker rooms that correspond with the students' sex as defined under Title IX and federal law; and
>
> IT IS FURTHER RESOLVED, that any student who requests an alternative arrangement shall be provided access to a designated gender-neutral bathroom or locker room, but shall not be permitted to use a bathroom or locker room designated for the opposite sex; and
>
> IT IS FURTHER RESOLVED, that the Board of Education of the Locust Valley Central School District mandates that students shall be permitted to participate in Physical Education and Sports that correspond with the students' sex as defined under Title IX and federal law . . . .

35. The text of the Resolution sets forth the partial legal basis for its adoption citing: (i) Title IX, which "prohibits discrimination based on sex in education programs and activities that receive federal financial assistance", (ii) *United States Dep't. of Education v. Louisiana,* 603 U.S.

9

866 (2024), *Tennessee v. Cardona*, 737 F. Supp. 3d 510 (E.D. Ky. 2024); *Kansas v. United States Dep't. of Education*, 739 F. Supp. 3d 902 (D. Kan. 2024), 739 F. Supp. 3d at 923; *Tennessee v. Cardona*, 762 F. Supp. 3d 615 (E.D. Ky. 2025), (iii) Executive Order 14168 titled *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, (iv) *Hispanic AIDS Forum v. Bruno*, 16 A.D.3d 294 (1st Dept. 2005), and (v) various enforcement actions pursued by USDOE in 2025. Each of those citations confirms that "sex" under Title IX means "biological sex" and not "gender identity" and the Resolution does not constitute discrimination under federal and state law.

36. The reason the District adopted the Resolution in October 2025 is the recent USDOE enforcement actions of various school districts across the country. The District acted as quickly as it could to analyze the issues and adopt the Resolution upon the commencement of the new school year.

37. As a result of USDOE's recent enforcement actions against other school districts, Plaintiffs—seeking to ensure compliance with Title IX and Executive Order 14168 and not risk statutory liability, the loss of federal funding, or exposure to a federal enforcement action—determined that a clarification was prudent and necessary.

38. Plaintiffs adopted the facially neutral Resolution with the purpose of complying with all law and ensuring that reasonable accommodations, including access to gender-neutral facilities, would be available to all students of the District so that all students' needs, privacy and safety would be respectfully addressed.

39. Plaintiffs took significant measures to ensure that its schools have gender-neutral facilities available for any student.

**B. The Resolution Is Facially Neutral**

40.     The Resolution is facially neutral. It does not target transgender students or otherwise burden students because of their gender identity.  Every student—regardless of gender identity or transgender status—is forbidden from playing sports or using an intimate space (i.e. bathroom/locker room) that diverges from their biological sex and is able to use any gender-neutral space.  Under the plain terms of the Resolution, both transgender girls and biological boys are forbidden from entering the girls' locker room (and vice versa).

41.     The Resolution does not burden transgender individuals any more than it does non-transgender students. Everyone within the District may use the gender-neutral facilities, regardless of biological sex or gender identity. And every student who wishes to use intimate facilities with those that share their biological sex can do so whether they are transgender or not.

42.     To accommodate all students, each of the District's schools contains gender-neutral bathrooms. Further, in the District's Middle School and High School, where children change for physical education class, gender-neutral locker rooms are located near the gymnasiums. Many students want to and do use the gender-neutral bathrooms and locker rooms throughout the District's schools due to, among other things, their private features.

43.     Further, the Resolution does not harm *all* transgender individuals as it would be improper to assume that all transgender students want to use intimate facilities designated for those of a different biological sex than their own.  Thus, the Resolution may only affect a subset of transgender individuals.

44.     The District and the Board did not act with animus toward, or to target, any child or the transgender community, but instead acted to comply with federal law and mitigate risk of a federal enforcement action.

11

**C. The Doe Proceeding against Massapequa UFSD**

45. On October 3, 2025, the Does, through NYCLU, commenced the Doe Proceeding before the Commissioner against Massapequa UFSD. According to that petition, the Doe Petitioners reside in Massapequa and brought the Doe Proceeding on behalf of their daughter "Janie Doe" who attends a Massapequa public school. Doe Petitioners seek redress relating to Massapequa's enforcement of resolutions adopted by its Board of Education to ensure bathroom/locker room access in schools complies with Title IX. With the Doe Petition, the Does requested an interim stay of enforcement of Massapequa UFSD's resolutions pending the outcome of the Doe Proceeding.

46. The Doe Petitioners do not live in Locust Valley and their daughter, Janie Doe, does not attend Locust Valley schools.

47. According to the Doe Petition, Janie Doe is a male by birth, who, in the last year has revealed to her parents that Janie Doe identifies as a female.

48. According to the Doe Petition, after passage of the resolutions by Massapequa UFSD, Janie Doe was denied access to the female locker room in Ames school within Massapequa School District prior to her physical education period on September 22, 2025.

49. On September 24, 2025, nine (9) days before the Doe Proceeding was commenced before the Commissioner, Daniel Morton-Bentley, in-house counsel for the NYSED and NYSED's Deputy Commissioner, sent a letter to the President of Massapequa UFSD expressing the Commissioner's opinion that the resolutions do not comply with state law.

50. Immediately after sending that letter to Massapequa UFSD, Mr. Morton-Bentley forwarded that letter by email to Johanna Miller, a member of the NYCLU, the organization representing the Does in their petition, with "FYI" in the body of that email.

51. According to NYCLU's website, Johanna Miller is on NYCLU's leadership team and is the "Chief of Special Initiatives & Education Policy Center Director" for the NYCLU.

52. Upon information and belief, the Doe Petition was a coordinated effort between the NYSED and the NYCLU to impose their agenda against Massapequa UFSD without a fair adjudication. The Commissioner, through her staff, appears to have orchestrated the Doe Proceeding and thereafter issued the Stay Order discussed below enjoining Massapequa's resolution, and ultimately, by the Joinder Order, Locust Valley's Resolution as well.

**D. The Commissioner's Stay Order Against Massapequa UFSD**

53. On October 14, 2025, the Commissioner entered the Stay Order in the Doe Proceeding, refusing to recuse herself despite Massapequa UFSD's request, staying Massapequa UFSD's resolutions and, as a result, requiring Massapequa UFSD (and ultimately, Plaintiffs by the Joinder Order) to allow biological males to enter intimate spaces with biological females (and vice versa).

54. The Commissioner's Stay Order states:

> State law and guidance on the rights of transgender individuals is unequivocal. Moreover, the people of New York State have codified the right to be free from discrimination on the basis of gender identity and expression in our State Constitution (N.Y. Const. Art. I, § XI). The case law, federal Executive Order (EO), and Title IX regulations relied upon by respondent are inapposite.
>
> . . .
>
> While the Commissioner has previously declined to address "novel issues of constitutional law," the Commissioner can address, and has addressed, constitutional claims on appeal (e.g., *Appeal of Music,* 63 Ed. Dept Rep, Decision No. 18,421 [concluding that petitioner was not entitled to a name-clearing hearing under the Fourteenth Amendment]; *Appeal of J.R. and N.R.,* 48 *id.* 239, Decision No. 15,848 [analyzing whether school officials engaged in an impermissible search under the Fourth Amendment])

. . .

> Finally, there is no basis for my recusal. Respondent suggests that a September 24, 2025 letter co-signed by counsel to the State Education Department (SED) reflects that I have "demonstrated bias" and "prejudge[d]" the outcome of this appeal. In addition to the requirement that I exercise judicial functions (Education Law§ 301), such as examining and deciding all appeals under Education Law§ 310, I have general supervisory authority over schools and the responsibility to execute all education policies determined by the Board of Regents (Education Law § 305). Therefore, I am obligated, by myself or through SED staff, to "advise and guide ... school officers ... in relation to their duties and the general management of the schools under their control" (Education Law 305[2]) and opine on the legal obligations of public schools (*see Matter of Katonah-Lewisboro v. N.Y. State Educ. Dep't,* CV-24-0696 [3d Dept, Jul. 17, 2025]; 8 NYCRR 3.7). Such roles present no basis for a conflict and respondent has otherwise failed to identify any basis for my recusal. As such, I decline to recuse myself *(see Appeal of A.M,* 64 Ed. Dept Rep, Decision No. 18,573; *Application of McCray, et al.,* 57 *id.* Decision No. 17,307; *Application of Simmons,* 53 *id.* Decision No. 16,596).

55. Commissioner Rosa's Stay Order provides no support for her position that "[s]tate law and guidance on the rights of transgender individuals is unequivocal."

56. In the Stay Order, Commissioner Rosa neither mentioned nor distinguished *Bruno*, a decision of the New York State Appellate Division, First Department.

57. The Commissioner, through her General Counsel's office, threatened enforcement against the Massapequa UFSD, recruited NYCLU to be an adversary of Massapequa UFSD, declined to recuse herself from adjudicating the action commenced before her by NYCLU nine (9) days after recruiting, and ruled against the Massapequa UFSD in that proceeding without any justification other than stating that state law is "unequivocal" and federal law is "inapposite".

58. Commissioner Rosa's Stay Order also provides no explanation for how she has jurisdiction to preside over the Doe Proceeding when Commissioner Rosa has repeatedly ruled that she does not have jurisdiction to adjudicate "novel constitutional issues", including issues

14

involving the Supremacy Clause of the United States Constitution.

59. In the Stay Order, the Commissioner only claimed that she may rule on constitutional issues by citing two other §310 decisions of the Commissioner. But in both of those decisions, there was no discussion as to whether the Commissioner has jurisdiction to rule over a "novel" constitutional issue. That point was not in dispute in either; there were no "novel" constitutional questions at issue.

60. Specifically, the issues raised here require a preemption analysis under the Supremacy Clause of the United States Constitution based on Does' own argument. *See* U.S. Const. Art. VI, cl. 2. The face of the District's October 15 Resolution itself cites, *inter alia*, Title IX, the President's Executive Order, federal case law and USDOE enforcement as the basis for its adoption. The Doe Petition acknowledges that the alleged conflict between federal and state law is a cornerstone to the Doe Proceeding as Doe addressed the issue in ten (10) out of their sixty-one (61) paragraphs by arguing that no conflict exists.

61. The Commissioner has confirmed on at least one other occasion that preemption, among other constitutional issues, was a basis to conclude that a proceeding before the Commissioner, like the Doe Proceeding, is "not the proper forum" requiring dismissal.

62. The Commissioner's decision that "case law, the federal Executive Order (EO), and Title IX regulations relied upon by respondent are inapposite" is entirely belied by the Commissioner's own guidance document titled *Creating a Safe, Supportive, and Affirming School Environment for Transgender and Gender Expansive Students: 2023 Legal Update and Best Practices* ("2023 Legal Update"), whereby the Commissioner expressly relied on Title IX when providing guidance to public school districts in New York State regarding bathroom and sports policy.

15

63. The Commissioner failed to explain how Title IX and the case law she relied on in the 2023 Legal Update, much of which has since been reversed, are now somehow "inapposite". Specifically, since that "2023 Legal Update" the cited case law upon which the Commissioner relied was either since reversed *en banc* (*i.e.*, *Soule by Stanescu v. Connecticut Ass'n of Sch., Inc.*, 57 F.4th 43 (2d Cir. 2022), *rev'd en banc* 90 F.4th 34 (2d Cir. 2023); *Adams v. School Bd. of St. Johns County*, 968 F.3d 1286 (11th Cir 2020), *rev'd en banc* 57 F.4th 791 (11th Cir 2022)) or distinguished as inapplicable (*Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020)) by *Louisiana,* 603 U.S. 866*, Tennessee v. Cardona*, 762 F. Supp. 3d 615 (E.D. Ky. 2025) and Executive Order 14168.

64. Commissioner Rosa has not provided a "2024 Legal Update" or "2025 Legal Update" on Title IX, as she has attempted to undermine the Federal Government's own interpretation of Title IX to advance her agenda.

**E. The Commissioner's October 17, 2025 Letter to Locust Valley**

65. On October 17, 2025, Mr. Daniel Morton-Bentley, Counsel and Deputy Commissioner for NYSED and Matthew Faiella, Special Counsel for LGBTQIA+ Rights Civil Rights Bureau for the Office of the New York State Attorney General sent a joint letter on the Commissioner's and the Attorney General's letterhead to the President of the Locust Valley Board of Education, revealing that the Commissioner had already determined that Locust Valley's Resolution was "materially identical" to the resolution adopted by Massapequa UFSD and "[t]he reasoning of the Commissioner's stay order compels an identical outcome here." The letter cites no statute, case or other law nor does the Commissioner's Stay Order itself.

66. On October 22, 2025, counsel responded to the October 17, 2025 letter on behalf of the Locust Valley District requesting clarification stating, in pertinent part:

> We are in receipt of your October 17, 2025 letter. It appears the Commissioner is seeking to extend the Commissioner's order

entered in another case to Locust Valley Central School District with no consideration of the facts associated with Locust Valley or any due process. The Locust Valley Board of Education's October 15, 2025 resolution sets forth a non-exclusive summary of the legal basis for its adoption. Please provide the basis for the State's position taken in your October 17, 2025 letter, including the assumed facts, asserted legal basis, and precedent for extending a stay order to unrelated cases so the District can fully consider and understand the State's position.

67. The District did not receive a response to that letter. The Commissioner has never articulated her position under the Stay Order as to how state law is "unequivocal" in light of *Bruno* and for other reasons and how federal law is "inapposite" despite having previously relied on Title IX on this very issue as she ruled in the Stay Order.

**F. The Commissioner's Order to Show Cause Against Locust Valley**

68. On October 27, 2025, the Commissioner entered an Order to Show Cause ("OSC") asking the District to show cause why it "should not be joined as a related party to *Appeal of Doe*, Appeal No. 22,518 [the Doe Proceeding] and subject to the interim order and stay issued in connection therewith."

69. On November 3, 2025, the District filed its opposition to the OSC. The District argued, *inter alia*, that: (i) the District's Resolution is facially neutral, not discriminatory and is compliant with both federal and state law, (ii) the Commissioner, by her own, rulings, does not have jurisdiction over "novel" constitutional that exists here as Title IX preempts the Commissioner's interpretation of state law under the Supremacy Clause of the United States Constitution, and (iii) the Commissioner pre-determined the outcome of the OSC for the reasons discussed above.

70. Plaintiffs maintained that the Resolution was not discriminatory specifically relying on, *inter alia*, the facially neutral text of the Resolution, the text of Title IX, the Executive Order, USDOE's recent enforcement actions and the reversed federal case law that the Commissioner

expressly cited in that 2023 Legal Update discussed above.

71. Plaintiffs also argued that they are not a "related party" to the Doe Proceeding and the Doe Petitioners have no standing to assert a claim against the District, *inter alia*, because: (i) the Doe Petitioners and their child have no alleged affiliation or relationship with Locust Valley public schools or Locust Valley generally, (ii) Doe Petitioners have not sought to modify or annul the Resolution adopted by the District or otherwise seek to have the District not enforce it, (iii) Doe Petitioners and their child are not injured or impacted by the District's Resolution in any capacity, and (iv) no student or party has filed any action (under § 310 or in court) against the District or its Board of Education.

**G. The Commissioner's Order Extending The Massapequa Stay Order To Locust Valley Requires Locust Valley to Violate Title IX, And Subjects the District to Federal Enforcement Actions**

72. Notwithstanding those arguments, on November 12, 2025, the Commissioner ruled that the Stay Order is extended to the District and the District is joined as a "related party" in the Doe Proceeding before the Commissioner.

73. Commissioner Rosa's Stay Order facilitates harassment towards biological girls and other students, including discomfort, embarrassment, psychological harm, and potential physical injury, by allowing biological males to enter sensitive, female only facilities and play sports with biological females.

74. The Commissioner's Stay Order subjects the District to enforcement action brought by USDOE, making it impossible for Plaintiffs to comply with the Commissioner's Stay Order and Title IX.

## CLAIMS

### Count I
### Federal Preemption of New York's Prohibition on
### Sex-Separated Intimate Facilities and Sports
### (Against All Defendants)

75. Plaintiffs repeat and incorporate by reference herein the allegations of the preceding paragraphs as if fully set forth herein.

76. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681.

77. The Constitution makes federal law "the supreme Law of the Land," U.S. CONST. art. VI, cl. 2, and any state law that is contrary to federal law is preempted and thus invalid under the Supremacy Clause.

78. State law is preempted by federal law if it directly conflicts with a provision of federal law. State law directly conflicts with federal law either if it is impossible to comply with both federal and state law or if state law stands as an obstacle to the full accomplishment and execution of the purposes and objectives of federal law. *Mutual Pharmaceutical Co. v. Bartlett*, 570 U.S. 472 (2013); *Gade v. Natl. Solid Wastes Mgt. Ass'n,* 505 U.S. 88, 103 (1992).

79. Title IX and its implementing regulations preempt New York law to the extent New York law requires schools to allow biological males identifying as female entry into female only intimate facilities such as bathrooms or locker rooms (and vice versa) and play sports consistent with their gender identity in the public-school setting.

80. By allowing males to enter sensitive female only spaces like locker rooms and play female sports (and vice versa), Commissioner Rosa's Stay Order prohibits the Board's Resolution from going into effect, subjects the District to federal enforcement actions, endangers students'

19

safety, privacy, and dignity; creates a hostile environment for students; and denies them access to educational activities or programs in violation of Title IX. *See, e.g.*, *Tennessee*, 737 F. Supp. 3d at 561 (explaining that "ignoring fundamental biological truths between the two sexes deprives women and girls of meaningful access to educational facilities").

81.     Therefore, the Defendants' interpretation of state law makes compliance with both federal and state law impossible for New York public schools receiving federal funds, such as, but not limited to, the District.

82.     Additionally, Defendants' interpretation of New York law obstructs Title IX's objectives. Eliminating sex-separate bathrooms, locker rooms and sports, as the Defendants have done here, "render[s] the purpose of [Title IX] obsolete in terms of the privacy interests Congress sought to protect by permitting sex-based segregation in sensitive areas where separation has been traditional" and to protect female sports. *Tennessee*, 737 F. Supp. 3d at 559. "[T]he privacy afforded by sex-separated bathrooms has been widely recognized throughout American history and jurisprudence. In fact, 'sex-separation in bathrooms dates back to ancient times, and, in the United States, preceded the nation's founding.'" *Adams*, 57 F.4th at 805. Thus, allowing access to intimate facilities and playing sports based on gender identity undermines these privacy and safety interests by exposing students to members of the opposite-biological-sex, frustrating federal goals.

83.     Accordingly, State Defendants' interpretation of state law as banning sex-segregated intimate facilities and sports is in actual conflict with Title IX and invalid under the Supremacy Clause of the United States Constitution. Consequently, an actual justiciable controversy exists which may be determined by a declaratory judgment of this Court.

84.     Defendants therefore cannot enforce New York law or the Stay Order against Plaintiffs based on the Resolution.

20

85.     Plaintiffs are therefore entitled to the requested declaratory and injunctive relief *infra*.

<u>**Count II**</u>
**Declaratory Judgment-The Resolution Complies with Title IX**
**(Against All Defendants)**

86.     Plaintiffs repeat and incorporate by reference herein the allegations of the preceding paragraphs as if fully set forth herein.

87.     An actual and justiciable controversy exists between the parties with respect to the scope of Title IX.

88.     Despite previously relying on Title IX in their 2023 Legal Update, the State Defendants have asserted without explanation that "[t]he case law, federal Executive Order (EO), and Title IX regulations relied upon by [the District and Massapequa UFSD] are inapposite" and state law is "unequivocal" - despite never once citing or explaining why *Bruno* does not apply. Therefore, according to New York state officials including Defendants, the Board's Resolution is in violation of Defendants' interpretation of state law because federal law does not apply.

89.     In contrast, the President of the United States under Executive Orders 14168, 14190 and 14201 and USDOE has determined that Title IX not only allows, but requires, intimate facilities in schools and sports to be segregated by biological sex. As such, the Board's Resolution not only complies with Title IX, but is compelled by federal law.

90.     Additionally, USDOE investigates and enforces violations of Title IX by terminating federal funding or referring prosecutions to the DOJ, and have done that to public school districts that have adopted and enforced bathroom/locker room and sports policy consistent with the Commissioner's Stay Order and interpretation of New York State Law as discussed *supra*. *See* 20 U.S.C. § 1682 and 34 C.F.R. Part 106. Therefore, under New York state officials'

interpretation of Title IX, the District and Board face the threat of enforcement actions by federal regulators.

91. State Defendants' interpretation of state law to the extent it is correct (it is not) is preempted by federal law under the Supremacy Clause of the United States Constitution.

92. Accordingly, Plaintiffs and Defendants have adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment on the disputed matters raised herein.

93. Plaintiffs are therefore entitled to the requested declaratory and injunctive relief *infra*.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully request entry of an Order and Judgment against Defendants and in favor of the Plaintiffs on all causes of action set forth herein, and grant Plaintiffs the following relief:

(i) A declaratory judgment that Plaintiffs' policies, practices, and actions related to the Resolution comply with, and do not constitute a violation of, Title IX;

(ii) A declaratory judgment that Plaintiffs' policies, practices, and actions related to the Resolution comply with, and do not constitute discrimination under, New York State law, including but not limited to DASA, GENDA and Proposition One;

(iii) A declaratory judgment that Title IX preempts DASA, GENDA, Proposition One and other New York state law to the extent that such state laws require access to intimate spaces (*i.e.*, bathrooms and locker rooms) and sports in public school district buildings/settings in accordance with a students' gender identity;

22

(iv)    A declaratory judgment that the Commissioner's Stay Order entered in the Doe Proceeding cannot be enforced against the District;

(v)    A permanent injunction enjoining Defendants Commissioner Rosa, Commissioner Miranda, and Attorney General James (including any officers, employees, and agents thereof) from taking enforcement action against Plaintiffs on the ground that the Resolution and/or enforcement thereof by Plaintiffs violates law;

(vi)    Awarding Plaintiffs the costs and attorneys' fees associated with this action; and

(vii)    Such other and further relief as this Court deems just and proper.

Dated:  Melville, New York
         December 17, 2025

Respectfully submitted,

**RIGANO LLC**

By: */s/ Nicholas C. Rigano*
     Nicholas C. Rigano, Esq. (NR1345)
     534 Broad Hollow Road, Suite 100
     Melville, New York 11747
     Telephone No. (631) 756-5900
     nrigano@riganollc.com